Rustler Ditch & Mining Co. v. Herhold, 172 Ill. App. 321.

## Rustler Ditch & Mining Company, Appellee, v. Frederick H. Herhold, Appellant.

### Gen. No. 16,805.

1. EVIDENCE—*not error to strike out where subsequently admitted.* Error is not committed in striking out testimony where full latitude is subsequently allowed in the examination as to the matter stricken.

2. ASSUMPSIT—*evidence.* A finding and judgment in *assumpsit* that defendant is indebted to plaintiff is not contrary to the evidence where there is strong evidence that the defendant in his personal capacity received money in trust for the plaintiff as indicated by a receipt and not as president of a company from which he has retired.

Appeal from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

MAYER, MEYER, AUSTRIAN & PLATT, for appellant.

IRA C. WOOD, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This was an action of the first class in *assumpsit*, brought in the Municipal Court of Chicago, November 11, 1909, by the Rustler Ditch & Mining Company, a corporation, appellee and hereinafter referred to as the Rustler Co., against Frederick H. Herhold, appellant and hereinafter referred to as defendant, to re-

cover the sum of $1,000, and interest, received by defendant in June, 1906, which moneys, as it was claimed, should have been paid to the Rustler Co. by defendant, but had not been. The defendant pleaded the general issue and filed an affidavit of merits, in which it was stated that defendant was not and never had been indebted to the Rustler Co. in any sum whatsoever. The cause was submitted to the court without a jury, resulting in a finding by the court for the Rustler Co. for $1,000, upon which finding judgment was entered. This appeal is prosecuted to reverse that judgment.

The material facts are as follows: For several years prior to January 3, 1908, and at the time defendant received the $1,000 in question, he was the president and treasurer of the Campion Mining & Trading Company, a corporation hereinafter called the Campion Co., and was the owner of about three-fourths of its capital stock and his father was the owner of a portion of the remaining fourth. The Campion Co. owned about one fourth of the capital stock of the Rustler Co. The defendant was also a member of the firm of F. Herhold & Sons, chair manufacturers, with office and factory located in the city of Chicago. C. W. Hamilton, residing in Milwaukee, Wisconsin, was the president of the Rustler Co., the mining operations of which company had not proven profitable. In the summer of 1905, John E. Heston, acted as agent for the Rustler Co. at Nome, Alaska. He sold some mining supplies for the company, receiving therefor the sum of $2,000, did some assessment work for the company, expending therefor the sum of $1,000, and early in the year 1906 brought back to Chicago the balance of $1,000, which he held in trust for the Rustler Co., called on defendant at his chair factory and told the latter that he had $1,000 to turn over to either Hamilton or the Rustler Co. On March 6, 1906, the defendant wrote Hamilton, "I saw Heston some time ago. He told me what he had done with the property of the

Rustler Co.   *   *   *   that he had in his pocket $1,000 to turn over to you. I told him to be sure   *   *   * and turn it over to you only, that I thought you were the only proper person to receive the money. I was sorry afterwards that I did not induce him to turn it over to me, and I could then send it to you." On June 2, 1906, Heston again called on the defendant and turned over the $1,000 in currency to him, and defendant at that time signed and delivered to Heston the following receipt:

"CHICAGO, June 2, 1906.

Received from John E. Heston one thousand dollars ($1,000), being the money that he has held in trust for the Rustler Ditch & Mining Company.

F. H. HERHOLD."

According to Heston's testimony (taken by deposition) as to what occurred at this interview, Heston told the defendant that Hamilton had requested him to turn over this $1,000 to defendant as he understood defendant was going to Milwaukee shortly and could then turn over the money to Hamilton; that defendant said that he believed Hamilton was entitled to this money, as Hamilton was the only party who had put up any money for the Rustler Co., and that he was going to Milwaukee in a day or two and would turn over the money to Hamilton.

As to the defendant's version of what occurred at this interview of June 2, 1906, he testified at the trial in April, 1910, as follows:

"In the course of the conversation the question came up about the money he was carrying around with him, and he reached down in his pocket, produced the currency, laid it on my desk, and said, 'The Campion Co. is one of the largest stockholders in this thing. Suppose you credit this up, give me credit for it, and, in the Spring when I do the assessment work again, send it to me.' I refused to take it at first. He said that I might as well credit him up with it and give him a receipt for it.   *   *   *   I finally said I would give

him, or the Rustler Ditch, credit for the money on the Campion books, and he said that was all right. * * * I then dictated the receipt to a stenographer. * * * The receipt is not as I dictated it. * * * I dictated it, 'Campion Mining & Trading Company,' and the line 'President,' and I signed it while we were sitting there and talking, and so didn't read it. * * * I have tried to find the shorthand book, and our stenographer cannot read it. It is another system. I don't think the stenographer I dictated the receipt to is in Chicago any more. We tried to locate him last week, but could not find him. I did not tell Mr. Heston I was going up to Milwaukee in a day or two and was going to turn over the thousand dollars to Mr. Hamilton. I did not tell Mr. Heston that Mr. Hamilton was entitled to this thousand dollars, instead of the Rustler Co.; that question never came up. * * * I saw Heston again a few days afterwards at my house, which was the last time I ever saw him.''

On June 9, 1906, the defendant wrote Hamilton at Milwaukee, ''I have the $1,000 from Heston. * * * Some day next week will come up to see you.'' On June 11th, the defendant again wrote Hamilton, ''As I wrote you Saturday, I have the $1,000, and expect to be in Milwaukee some time this week, when I will call on you.'' In neither of these letters did the defendant mention, (as he testified on the trial had been done on June 5, 1906), that he had deposited said $1,000 in the bank account of the Campion Co. to the credit of the Rustler Co. At the trial, the defendant offered in evidence a page of a book, which he testified was a memorandum cash book which he personally kept at his office in the chair factory for the Campion Co., as treasurer of that company; that the entries therein were in his own handwriting, made at or about the time of each transaction, and were true and correct; that it was a book of original entry, from which the bookkeeper of the Campion Co. posted the entries therein into the general books of the Campion Co.; that the particular entry on said page of said memo-

randum book was, "Dr.—Cash—6-5-1906—Rustler Ditch Co., $1,000," that this entry was posted into the books of the Campion Co. about that date by said book-keeper, and that he personally saw the bookkeeper so post this particular entry, being present at the time at the office of the Campion Co. in the Merchants' Loan & Trust Building in Chicago. The page of said memorandum book was admitted in evidence. On cross-examination of the defendant it developed that said entry had been mutilated by an apparent erasure and substitution, that said memorandum book did not contain solely the transactions of the Campion Co.; that defendant had some old individual memoranda in the front part of the book, relative to other companies he was interested in, and that in making the Campion Co. entries therein defendant had started from the back of the book and worked toward the front.

On July 13, 1906, Hamilton, in reply to the defendant's letter in which defendant suggested that more money be raised to prevent the Rustler Co. losing all its rights, wrote defendant, "I have been the only one that has put up the cash and have held the bag ever since the company was started and am through putting up money. The company is out of debt and, in fairness to me, any money that is on hand should be turned back to me and the company wound up." On September 8, 1906, Hamilton again wrote the defendant, "Have not seen anything of you since you wrote you had $1,000 of the Co.'s money rec'd from Heston. * * * It looks like a dead duck, and I would like to have some action by the Co., authorizing the return of that $1,000 to me, which is only giving me back part of my * * * money." On October 4, 1906, Hamilton again wrote the defendant saying he had not received any reply to his letter of September 8th. On October 30, 1906, Hamilton again wrote the defendant, "You might send the check for the balance of the money turned over by Heston." But defendant did not send

the money, and in the fall of 1906, Hamilton went to Chicago and saw the defendant. Up to this time, notwithstanding Hamilton's numerous requests for the money, Hamilton had not been advised by defendant that the latter had deposited the money in the funds of the Campion Company to the credit of the Rustler Company.

Hamilton and the defendant agree in their testimony that subsequently to October, 1906, they had three interviews in Chicago, relative to this money; one in the fall of 1906, one in the winter of 1907, about two months later, and one in November 1909, shortly before the beginning of this action. As to the first interview, Hamilton testified that he asked defendant for the money, that defendant said he was willing to turn it over to Hamilton, but that Heston had given it to defendant and he could not afford to take the chance of giving it to Hamilton or the Rustler Company, and then have Heston make a demand on him for the money, and that, therefore, he would not, without direct authority from Heston, pay the money to either Hamilton or the Rustler Company. The defendant in his testimony practically corroborates Hamilton's statement, as above, as to what was said at this first interview, only he says that he also told Hamilton that he had deposited the $1,000 in the funds of the Campion Company, and had given the Rustler Company credit for the same on the books of the Campion Company. And Hamilton says that defendant told him this at either the first or second interview, and he replied to defendant that that fact did not interest him, as he was looking solely to defendant for the money and wanted it immediately. Both Hamilton and defendant testify that at the second interview, in the winter of 1907, Hamilton made another demand for the money, but defendant again refused to pay over the same without an order from Heston, and defendant said he would write and see if he could locate Heston

and endeavor to get the order from Heston. Defendant testified he wrote several letters to Heston but that these letters were returned to defendant, that he was unable to locate Heston and never at any time heard from him by mail, and he further testified that at the times of said first and second interviews he was president and treasurer of the Campion Company, and could have, as such, paid the money over if he had desired to. Subsequently to said second interview, on February 25, 1907, Hamilton, as president of the Rustler Company, wrote defendant, "Have you heard from Heston, or has he sent an order to turn the $1,000 over to the Rustler Co.? I wrote him but have no reply as yet," to which defendant replied on the following day to the effect that he had not succeeded in locating Heston, that recently he wrote Heston to a new address, which he had obtained, and that defendant would advise Hamilton as soon as he heard from Heston. On April 23, 1907, Hamilton, as president, again wrote defendant, inquiring if the latter had succeeded in locating Heston, to which defendant replied that he had not. On January 10, 1908, Hamilton again wrote defendant to the effect that Hamilton had been endeavoring to ascertain the address of Heston, but that his letters addressed to Heston at Denver and Nome, Alaska, had been returned, and that Hamilton could not understand why defendant should not forward the money to the Rustler Company, so that the winding up of its affairs might be facilitated, and requested a prompt reply. No reply to this letter was received. Defendant testified that on January 3, 1908, he resigned his position as president and treasurer of the Campion Company and on that date ceased having any connection with or interest in that company.

Heston was finally located in Denver, Colo., in October, 1909, by George C. Weiss, vice-president of the Rustler Company. Heston testified that he there delivered to Weiss an order on defendant, dated October

19, 1909, directing and demanding defendant immediately to turn over the money to either Hamilton or the Rustler Company. Weiss brought that written order to Chicago. Heston further testified that about October 19, 1909, he deposited in the mail at Denver, Colorado, a registered letter, dated October 19, 1909, addressed to the defendant, care of the chair factory, Chicago, in which Heston wrote that he had just recently learned that defendant had not turned over the money, which he had paid defendant in the spring of 1906, either to the Rustler Company or to Hamilton, and in which Heston further stated, "It was our understanding at the time that you would immediately turn over that money" to Hamilton, president of the company. "I hold your receipt for same.  *  *  * You know, very well, that you would not have been paid this money under any other circumstances, and your holding it is a betrayal of trust." Heston further testified that said letter, so registered, was returned to him unopened at Denver, with the outside of the envelope marked by the postal authorities, "Returned to Writer  *  *  * Refused." This original envelope, so marked, also bore on its face, when it was mailed to defendant, the words "John E. Heston, Denver, Colo.," and the same was attached to Heston's deposition as an exhibit. Heston further testified that immediately after the return to him of said registered letter unopened, he opened the envelope and enclosed the letter in a plain envelope, without any return address thereon, addressed to defendant, care of the chair factory, Chicago, and that the same was never returned to him.

In November, 1909, Hamilton called at defendant's office in Chicago. George C. Weiss was with him. Hamilton had with him the order which Heston had given Weiss, and he showed said order to defendant and demanded the money, but defendant said that he could not *now* pay over the money; that he was no

longer president and treasurer of the Campion Company; that he had sold out all of his interest therein on January 3, 1908; that the money was in the hands of the Campion Company, and that he now had no control over it. Hamilton replied to this that it made no difference to him what defendant had done with the money, and that he looked to defendant, personally, for it, but defendant again refused to pay the money and Hamilton and Weiss left the office and shortly thereafter this action was commenced. Weiss testified that in the fall of 1907, he had a conversation with defendant about getting an order from Heston for the money, and that at that conversation defendant said that if an order to pay the money was procured from Heston, *he,* the defendant, would turn over the money. The defendant admits having this conversation, but says that he used the word "we," meaning that upon getting said order the Campion Company would turn over the money.

Among the several errors assigned, but two are argued by counsel for appellant in their brief, viz., (a) that the judgment is contrary to the evidence, and (b) that the court erred in refusing to admit certain offered testimony of the defendant in reference to the giving by him of the receipt to Heston.

As to this alleged error of the court in not admitting said testimony of the defendant, it is true that on the direct examination of the defendant his testimony, as to his having dictated the receipt as the receipt of the Campion Company, to be signed by him as president of that company, instead of by himself personally, was on motion of counsel for plaintiff stricken out by the court. But, on re-direct examination of the witness, the court allowed the fullest latitude to the witness in stating all the circumstances relative to the signing of said receipt. We do not think any error was committed in this particular.

We are also of the opinion that the finding and judg-

ment of the court are not contrary to the evidence. Counsel for defendant argue that the defendant "was always ready and willing" to turn over this $1,000 to the Rustler Company upon an order from Heston at any time up to January 3, 1908, when defendant ceased to be an officer and stockholder of the Campion Company. We cannot agree with counsel. Furthermore, we think that the entire record of the case clearly shows that the money was left with the defendant, personally, in trust, to be paid over on demand to the Rustler Company or to Hamilton, president of that company, and that it should immediately upon demand made have been so paid over by defendant.

The judgment of the Municipal Court is affirmed.

*Affirmed.*